UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM E. POWELL,<br><br>**Plaintiff,**<br><br>v.<br><br>INTERNAL REVENUE SERVICE,<br><br>**Defendant.** | Civil Action No. 21-2838 (JEB) |

MEMORANDUM OPINION

This case is the latest round in the indefatigable *pro se* Plaintiff William E. Powell's quest

for Internal Revenue Service records about himself, his late father and grandfather, and their

family business, trusts, and estates.  See, e.g., Powell v. Internal Revenue Serv., 255 F. Supp. 3d

33, 37 (D.D.C. 2017).  The current dispute arose when Powell requested a batch of tax records

from the IRS, did not receive a response, and filed this suit.  The IRS claims that it then sent

Powell all records he requested and now moves to dismiss this case as moot.  As that is not

entirely correct, the Court will grant Defendant's Motion in part and deny it in part.

I.      **Background**

The latest *contretemps* began on September 19, 2021, when Powell faxed to the

Department of the Treasury a request under the Privacy Act, 5 U.S.C. § 552a, for some of the

IRS's records associated with his Social Security number.  See ECF No. 28-1 (First Request).

Specifically, Powell sought "a copy of the INOL(E) (Master File Entity data (including SSA

name controls, Cross Reference information, and Merge Transactions) for a specific TIN[)] . . .

and INOL(I) (Display an index of all tax modules for the requested SSN) . . . and any record contained therein pertaining to me . . . from the year 1987 through 2021." Id.

When he did not receive a response, Plaintiff filed this suit asking the Court to order the IRS to search for the requested records and send him copies. See ECF No. 1 (Complaint) at 2–3. While this case was pending, Powell faxed a second request to the Treasury Department, also seeking IRS records about himself under the Privacy Act. See ECF No. 28-2 (Second Request). This time, he sought "a copy of the Printout of the INOLES, IMFOL(I) and IMFOL(E) and any record contained therein pertaining to me . . . from the year 1987 through 1993." Id. He did not receive a response to this request either, and in his Second Amended Complaint he sought an order compelling the IRS to send him all records he had requested. See ECF No. 22 (Second Am. Compl.) at 3–4.

The IRS then processed his request under the Freedom of Information Act, did not claim any FOIA exemptions, and — the IRS believes — sent Powell all records he had asked for. See ECF No. 24 (Def. MTD) at 2–3. The Service now moves to dismiss Powell's claims as moot. Id. at 3.

## II.    Legal Standard

In evaluating Defendant's Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted); see also Jerome Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005). This standard governs the Court's considerations of Defendant's contentions under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Scheuer v. Rhodes, 416 U.S.

232, 236 (1974) ("[I]n passing on a motion to dismiss, whether on the ground of lack of

jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the

complaint should be construed favorably to the pleader."); Walker v. Jones, 733 F.2d 923, 925–

26 (D.C. Cir. 1984) (same).  The Court need not accept as true, however, "a legal conclusion

couched as a factual allegation," nor an inference unsupported by the facts set forth in the

Complaint.  Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (citation

omitted).

Article III of the Constitution limits federal-court jurisdiction to actual cases or

controversies, which "must be extant at all stages of review, not merely at the time the complaint

is filed."  Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 71 (2013) (quoting Arizonans for

Off. Eng. v. Arizona, 520 U.S. 43, 67 (1997)) (quotation marks omitted).  "If an intervening

circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point

during litigation, the action can no longer proceed and must be dismissed as moot."  Id. (quoting

Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477–78 (1990)) (quotation marks omitted).  In the

FOIA context, this means that where the government has released certain requested documents,

the case is moot as to them.  Williams & Connolly v. Sec. & Exch. Comm'n, 662 F.3d 1240,

1244 (D.C. Cir. 2011); cf. Perry v. Block, 684 F.2d 121, 125 (D.C. Cir. 1982) ("[H]owever fitful

or delayed the release of information under the FOIA may be, once all requested records are

surrendered, federal courts have no further statutory function to perform.").

III.    Analysis

Contending that it sent Powell everything he asked for, the IRS asserts that his suit is

moot.  As the following sections will discuss, that does not seem to be the case.  The Court treats

each of Powell's requests separately and then briefly addresses some final issues related to both.

3

A.  First Request

The Court starts with Powell's first request, which sought records accessed through command codes "INOL(E)" and "INOL(I)."  While Plaintiff's numerous suits against the IRS have made him fluent in the Service's information-storage-and-retrieval system, a brief refresher might help to orient readers who have never spent a rainy afternoon curled up with the Internal Revenue Manual.  The IRS stores taxpayer information in its Master File and Non-Master File. Hysell v. Internal Revenue Serv., 36 F. Supp. 3d 58, 60 (D.D.C. 2014).  To retrieve the information in these files, an IRS employee enters a specific command code along with a taxpayer-identification number (such as a Social Security number).  Id.  Different command codes fetch different records.  For example, entering command code IMFOL along with a taxpayer's Social Security number will return "basic taxpayer identifying information and account information . . . for that individual."  Id. at 60–61.  At issue here, therefore, is Powell's request for the information that an IRS employee would retrieve by entering Powell's Social Security number and command codes "INOL(E)" and "INOL(I)," covering the years 1987 through 2021.  See First Request.

Plaintiff alleges that he has not received these records.  See ECF No. 26 (Pl. Opp.) at 2, 4. The IRS counters that it sent him the records accessed through both codes.  See ECF No. 24-1 (Declaration of Jocelyn S. Peyton), ¶ 3.  While the parties only match assertions with counter-assertions — instead of looking into why their stories might diverge — their disagreement likely stems from problems with the codes that Powell requested.

First, code "INOL(I)" does not seem to exist.  See Internal Revenue Manual 2.  Instead, Powell may have been seeking code IMFOLI.  The spelling is similar, and Plaintiff's description of what "INOL(I)" should yield ("Display an index of all tax modules for the requested SSN"),

see First Request, matches what the Internal Revenue Manual says IMFOLI will return (IMFOL

plus definer "I" will "display of an index of all the tax modules for the input SSN").  See Internal

Revenue Manual 2.3.51.9.  Powell, moreover, sought IMFOLI transcripts in his second request.

See Second Request.

   Second, Powell's request for code "INOL(E)" — which presumably refers to code

INOLE, see Internal Revenue Manual 2.3.47 — may have caused its own problems.  When an

IRS employee searches code INOLE, it seems that the code must be followed by one of five

definers.  Id.  Different definers retrieve different information.  For example, adding the definer

"S" will return "[n]ame lines (current and prior), street addresses, tax year, Social Security name

controls, cross reference and other information," while adding the definer "X" will return "DM1

name controls, Cross reference and merge transaction information."  Id.

   The difficulty is that Powell's first request for "INOL(E)" did not specify a definer.  It is

therefore unclear what he is seeking.  He may have been after INOLE transcripts using all

definers.  When Powell wanted that in the past, however, he said so: in 2018, he filed a Privacy

Act request for "Master File entity data resulting from a Command Code INOLE search with all

definers."  Powell v. Internal Revenue Serv., No. 18-453, 2019 WL 1980973, at *1, *4 (D.D.C.

2019).  In his second request in this case, he sought "a copy of the Printout of the INOLES,"

Second Request — that is, INOLE with definer "S" — and received it for years through 2021.

See ECF No. 26-1 (IRS Documents Produced) at 1.  Indeed, the Internal Revenue Manual

suggests that without further specification, definer "S" was most appropriate for Powell's

request.  See Internal Revenue Manual 2.3.47.3.  Because Powell did not specify whether he

sought INOLE with all definers or with one in particular, it is unclear what he wanted and

whether he got it.

The Court could conceivably decide the current Motion using these inferences from the Internal Revenue Manual.  It could, for example, hold that Powell did not adequately identify the records he was seeking, that he thereby failed to exhaust his administrative remedies, and so dismiss.  Powell, 255 F. Supp. 3d at 41–42 (dismissing claim under Privacy Act because Plaintiff did not exhaust administrative remedies); cf. Kowalczyk v. Dep't of Just., 73 F.3d 386, 388 (D.C. Cir. 1996) (FOIA request "reasonably describes records if the agency is able to determine precisely what records are being requested") (citation and internal quotation marks omitted); Hudgins v. Internal Revenue Serv., 620 F. Supp. 19, 21 (D.D.C. 1985) ("[A]n agency is not required to have clairvoyant capabilities to discover the requester's need.") (citation and internal quotation marks omitted).

The difficulty is that the IRS has never made this argument — indeed, it maintained only that it produced all responsive records — and the Court is not certain that it is drawing the correct inferences.  As a result, it will resolve the conundrum in Plaintiff's favor (as the non-moving party) and find that he duly requested records that the IRS has not provided.  Powell's claims related to his first request will thus not be dismissed.  The Service, of course, is free to clear up this issue at summary judgment.

B.  Second Request

So much for Powell's first request.  As for his second — for codes INOLES, IMFOLI and IMFOLE from 1987 through 1993 — the IRS claims once again that it sent him all requested records.  See Peyton Decl. at 1–2.  Once again, Powell disagrees.  Specifically, he claims that the records he received are inadequate for three reasons: some are missing information for the year 1987, some are missing other information that he thought they would contain, and some may be

inauthentic.  See Pl. Opp. at 2–3.  The first claim survives the Motion to Dismiss.  The second

and third do not.

> 1. *1987 missing*

Because the INOLES and IMFOLE transcripts the IRS sent Powell do not extend back to

1987, his claims for these records are not moot.  After a duly filed request, FOIA requires an

agency to provide all responsive documents; claim a FOIA exemption; or, if it cannot find

requested documents, show that its search for them was adequate.  Steinberg v. U.S. Dep't of

Just., 23 F.3d 548, 551–52 (D.C. Cir. 1994) (agency claiming it lacks responsive documents

must "describe in . . . detail what records were searched, by whom, and through what process").

Here, Powell's second request asked for "a copy of the Printout of the INOLES . . . AND

IMFOL(E) and any record contained therein pertaining to me starting from the year 1987

through 1993."  While the IRS sent him both transcripts, neither includes the 1987 records.  See

IRS Docs at 1, 3.  The IRS has therefore not sent Plaintiff all requested records, claimed that they

are exempt from FOIA, or shown that its search was adequate.  Instead, it has merely asserted,

"All records responsive to Powell's requests were fully released to Powell on April 22 2022, as

stated in the declaration attached to Defendant's Motion to Dismiss."  ECF No. 28 (Def. Reply)

at 4.  Maybe the IRS neglected to include 1987 in its search; maybe there are no 1987 data.

Because the Service does not explain the omission or how it conducted the search, the Court

must draw the inference favoring Plaintiff: that the IRS failed to disclose responsive records

from 1987.  The Court will therefore deny the Motion to Dismiss Powell's claims for these

records.

> 2. *Other information missing*

By contrast, Powell also claims that records he received are missing information he thought they would contain.  But "FOIA only requires that an agency turn over <u>records</u>, not that it provide a requestor with specific information."  <u>Powell</u>, 255 F. Supp. 3d at 43; <u>see also</u> <u>Yeager</u> <u>v. Drug Enf't Admin.</u>, 678 F.2d 315, 321 (D.C. Cir. 1982) ("It is well settled that an agency is not required by FOIA to create a document that does not exist in order to satisfy a request.  A requester is entitled only to records that an agency has in fact chosen to create and retain.") (internal citations omitted).  Likewise, the Privacy Act requires agencies to make available to a requesting individual "any information pertaining to him which is contained in the system," 5 U.S.C. § 552a(d)(1) — not information the system does not contain that a requester hoped it would.  As a result, the Privacy Act authorizes suit against an agency that "refuses to comply" with a request, not one whose compliance disappoints the requester.  <u>Id.</u> § 552a(g)(1)(B).  When a requester receives a document, finds that it does not have the information he expected, and challenges the agency's response on that basis, his suit will be dismissed for failure to state a claim.

Such is the fate of Powell's objections to the INOLES and IMFOLE transcripts he received for years other than 1987.  <u>See</u> IRS Docs at 1, 3–4.  Comparing these transcripts to examples in the Internal Revenue Manual, Powell notes three gaps between what he expected these records would contain and what they actually did.  First, "[t]he INOLES printout was missing the Cross Reference Information and Merge Transaction Section (XREF1/Transaction Information), Date of Death (DOD), SPOUSE SSN and other information."  Pl. Opp. at 2.  Second, "Defendants did not provide the years of the INOLES transcripts, but only had the date of 1999 for the last update cycle (UPDATE CYC), the TAXPAYER YEAR, when the address was changed in 2019, and the TAXPAYER YEAR of Plaintiff's name in 2002."  <u>Id.</u> at 3.

Finally, "[o]n the IMFOLE printout, Defendant has omitted, but not redacted, the Spouse SSN and Date of Death (DOD) with other pertinent information." Id. at 4.

As just discussed, surprise does not a cause of action make. To the extent that the IRS sent Powell responsive records — whether they looked like what he expected or not — it has fully complied with his request. Powell, 255 F. Supp. 3d at 43; Muckrock, LLC v. Cent. Intel. Agency, 300 F. Supp. 3d 108, 120 (D.D.C. 2018) ("[I]f an agency has conducted an adequate search and has released all of the non-exempt information that is responsive to a FOIA request, federal courts ordinarily have no further role to play . . . . Put another way, the standard FOIA claim is typically deemed moot once the agency produces the requested records."). Powell's challenge to these records is therefore unavailing.

> 3. *Challenge to documents' authenticity*

Plaintiff also cannot state a claim by speculating that the IRS's "documents are not authentic, because Defendants have two (2) different dates for the address change for Plaintiff" and "altered the printout of pertinent information." Pl. Opp. at 3, 5. This Court has elsewhere explained that it is "well established that questions about the authenticity and correctness of the released records are beyond the scope of the Court's FOIA jurisdiction." Powell, 255 F. Supp. 3d at 43 (quoting Hedrick v. Fed. Bureau of Investigation, 216 F. Supp. 3d 84, 95 (D.D.C. 2016)). Powell cannot state a claim by simply speculating that documents he received are forged.

> C. Common Issues

Powell raises several other concerns about the response to both of his requests. None gains any traction.

> 1. *Lack of explanation of search*

He first argues that this case is not moot because the IRS has not explained the details of

its search.  See Pl. Opp. at 6–7.  FOIA does indeed require the Service to show that it conducted

an adequate search — for requested documents that it could not find.  Weisberg v. U.S. Dep't of

Just., 745 F.2d 1476, 1485 (D.C. Cir. 1984).  For documents that the IRS found and sent to

Powell, by contrast, the Service has fully satisfied its obligations under FOIA and the Privacy

Act.  Indeed, the IRS has already shown that it conducted a search "reasonably calculated" to

find such documents — by actually finding them.  Truitt v. Dep't of State, 897 F.2d 540, 542

(D.C. Cir. 1990).  While the Service must explain how it looked for any documents it could not

find, it does not need to chronicle how it found the others.

### 2.  *Other records*

Powell's contention that the IRS has neglected to send him other records also fails.  In his

Opposition, he asserts that he

> also requested any records pertaining to Plaintiff under Plaintiff's
> SSN, (i.e., (1987 through 2021 IMF MFT (30) Specific), Schedule
> K-1's and attached tax return, Official IRS NMF MFT 20 Transcript
> (Specific)(literal)(Complete),      IRPTR-(Specific),      (literal)
> (Complete), ENMOD- (IMF Entity Data and IMF Display,
> (Specific), (literal) (Complete,)(INOL, INOLT, INOLEP, INOLEX,
> INOLEG IMFOL-(SPECIFIC, LITERAL COMPLETE) , Form 709
> and Form 709 MFT 51 and NMF MFT 54, Form 8892, TXMOD
> (Definer—A, C, L, N, P, S, or X (as entered,( Specific) (Literal)
> Complete), (SUMRY-(Specific), (Literal), (Compete), (IMFOL and
> SPARQ -Specific, Literal, Complete), (IMFOR, and RTVUE
> (Specific), (Literal), (Complete), PMFOLS, (Specific) (Literal)
> (Complete) PMFOLD (Specific) (Literal) (Complete), death
> certificate for Plaintiff and List of prior addresses changes for
> Plaintiff[)].

Pl. Opp. at 4.  Since Powell has not received those records, he maintains that his suit should not

be dismissed.  Id. at 4, 7.

Powell did not receive those records because he did not request them.  Instead, he requested "a copy of the INOL(E) . . . and INOL(I) . . . and any record contained therein pertaining to me," First Request, and "a copy of the Printout of the INOLES, IMFOL(I), and IMFOL(E) and any record contained therein pertaining to me."  Second Request.  That is, he requested specific records accessed through specific command codes — not "any records pertaining to . . . Plaintiff's SSN" and not the other codes he now claims he is owed.  If Plaintiff wants these new records, he must file a new request.  Powell, 255 F. Supp. 3d. at 45 (Plaintiff has no claim to records he did not request, and "[w]hile Powell may apparently believe that many of these specific tax documents will turn up in the various transcripts that he did request, that does not constitute an independent claim to such records.").

       3.   *Privacy Act vs. FOIA*

Even for records Powell received, he claims a continuing controversy because he filed his request under the Privacy Act while the IRS processed it under FOIA.  Id. at 5–6.  He is mistaken.

Plaintiff correctly points out that when someone requests information under either FOIA or the Privacy Act, an agency is supposed to process the request under both statutes.  See Pl. Opp. at 5.  That way, whether someone requests information under one statute or the other, he will receive all records that he would be entitled to under either.  Blazy v. Tenet, 979 F. Supp. 10, 16 (D.D.C. 1997) ("Even where a requester is not entitled to a document under the Privacy Act, he or she may still be entitled to it under the FOIA. . . .  Document requests therefore must be analyzed under both Acts."); see also Freeman v. U.S. Dep't of Just. (Fed. Bureau of Investigation), 822 F. Supp. 1064, 1066 (S.D.N.Y. 1993) (taking no issue with agency's "process[ing] virtually all Privacy Act requests under FOIA").

Any injury to Powell, however, would arise from the gap between the documents he is owed and the ones the IRS sent him, not the particular statutory route by which he arrived at the same end point.  Cf. Williams & Connolly, 662 F.3d at 1243–44 (holding that because agency released documents pursuant to Federal Rules of Criminal Procedure, request for same documents under FOIA was moot).  Here, because the IRS did not claim any exemptions under either statute, see Def. MTD at 2–3, Powell would have received the same records whether the IRS responded to his request under FOIA, the Privacy Act, or both.  Nor does Powell allege otherwise.  See Pl. Opp. at 5–6.  In fact, the IRS processed Powell's request under FOIA because that statute provides greater access to IRS records than does the Privacy Act.  See MTD at 2 n.2.  At bottom, Plaintiff would not have received more documents had his request been processed under both statutes.  He therefore cannot plead an injury from receiving documents under one statute instead of another.

**IV.    Conclusion**

For the foregoing reasons, the Court will deny Defendant's Motion to Dismiss Plaintiff's claims for (1) the "INOL(E)" and "INOL(I)" transcripts covering 1987 through 2021 and (2) the INOLES and IMFOLE transcripts for 1987.  The Court will grant the Motion to Dismiss as to all other claims.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  June 30, 2022